IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUIS MEDINA and
EDNA MEDINA,

        Plaintiffs,

v.                                                   CIV 10-0299 KBM/CEG

CITIFINANCIAL, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion for Emergency Temporary Restraining Order and Application for Preliminary Injunction *(Docs. 1-3 & 1-4).* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. Having reviewed the motion, application, objections, applicable law, and finding that no hearing is required for a ruling, the Court finds the motion and application are not well-taken and will be denied.

In May of 2007, Plaintiffs Luis and Edna Medina entered into a Disclosure Statement, Note, and Security Agreement requiring payment in the amount of $32,447.80 ("the Note") with Defendant CitiFinancial. Pursuant to the terms of the Note, payments were in the amount of $375.51 per month for a period of 181 months. The Note was secured by a first mortgage on Plaintiffs' home. At the time of execution of the Note, Plaintiffs' monthly income was $1,574.00. Mr. Medina lost his job in 2008, thus decreasing the Medina's monthly income to

$954.00. On March 22, 2010,[1] Plaintiffs filed this lawsuit against Defendant for violation of the Home Loan Protection Act ("HLPA" or "the Act").

Plaintiffs argue that the Defendant should not have factored in income received from Mr. Medina's part-time job because he was 72-years old and unlikely to continue such work for the fifteen years to pay back the loan.[2]

As of the initial filing date, Plaintiffs were current on their payments under the Note. Defendant had not demanded payment as it had no reason to do so. Plaintiffs now request that the Court issue a preliminary injunction excusing them from making their mortgage payment and restraining Defendant from demanding such payment.

A preliminary injunction is an extraordinary equitable remedy. *See, e.g.*, *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). To prevail on a request for a preliminary injunction, Plaintiffs must show: (1) they will suffer irreparable harm unless the injunction is issued; (2) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing

---

[1] This case was originally filed in the Fifth Judicial District Court in and for the County of Chaves, State of New Mexico, No. CV-2010-256. Defendant filed its Notice of Removal on March 31, 2010, thereby removing the case to this Court.

[2] Loans are made everyday based on an individual or couple's income which includes income from their current jobs. Very few jobs, if any, are 100% guaranteed, especially considering current economic conditions. And every person has a 100% chance of dying, it is just a question of when and how. Congress has recognized that a lender should be able to consider age in assessing the likelihood of continued employment or good health in deciding whether to loan money:

> (b)  It shall not constitute discrimination for purposes of this subchapter for a creditor . . .
> (2)  to make an inquiry of the applicant's age or of whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of income levels, credit history, or other pertinent element of credit-worthiness.

15 U.S.C. § 1691(b)(2) ("The Equal Credit Opportunity Act"). But it is unreasonable to equate permission to consider such factors with Plaintiff's proposed requirement that lenders bear the burden for inaccurate estimations about matters related to age and possible infirmity or death.

party; (3) the injunction, if issued, will not adversely affect the public interest; and (4) a substantial likelihood of prevailing on the merits.  *See, e.g.*, *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

The Tenth Circuit, however, has adopted a modified requirement as to the likelihood of success.  *Id.*  If Plaintiffs establish the first three requirements listed above for a preliminary injunction, then the fourth requirement may be satisfied by "showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of a more deliberate investigation."  *Id.* at 1195 (citation omitted).  Furthermore, there are three types of preliminary injunctions that are disfavored and thus, require a strong showing of success on the merits as well as a balancing of harms: "(1) preliminary injunctions altering the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions granting the moving party all the relief it could recover at the conclusion of a full trial on the merits."  *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (citation omitted).

"[A] showing of an irreparable injury is a necessary condition for the issuance of a preliminary injunction[.]"  *Vega v. Wiley*, 259 F. App'x 104, 105-06 (10th Cir. 2007).

> To constitute irreparable harm, an injury must be certain, great, actual and not theoretical.  Irreparable harm is not harm that is merely serious or substantial.  The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.  It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages.

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citations and internal quotation marks omitted).  "Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first

demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotation, internal quotation marks, and brackets omitted).

Plaintiffs state that they are currently living below the poverty level, and after paying their mortgage each month it is impossible for them to afford their basic living expenses including food and medications. They contend that this harm is irreparable because they will never be able to make up for their loss of nutrition and medicine. Although a lack of nutrition and failure to receive medications can have serious consequences, "[i]rreparable harm is not harm that is merely serious or substantial." *Heideman*, 348 F.3d at 1189. Plaintiffs' assertion that loss of nutrition and medicine will cause them irreparable harm appears purely speculative. Moreover, as noted by Defendant, Plaintiffs' decision to make their mortgage payment is entirely within their control. Clearly Plaintiffs can choose to use their money to buy food and medicine rather than pay their mortgage. Thus, Plaintiffs have merely argued an economic loss that may be adequately compensated by monetary damages and have failed to meet their burden of showing one of the most important requirements for the issuance of a preliminary injunction.

Plaintiffs have also failed to demonstrate that the threatened injury outweighs the harm the preliminary injunction may cause the opposing party. In balancing the harm caused to each party, Plaintiffs' only argument is that they are living below the poverty level while Defendant is a large corporation "making unknown millions," and consequently, Defendant does not need the money. This argument lacks merit. It is truly unfortunate that Plaintiffs are poverty stricken, but Defendant should not be punished simply because it has assets and Plaintiffs do not. In the event a violation of law is found, Plaintiffs can be made whole by monetary damages.

I am also unpersuaded that an injunction will not adversely affect the public interest. Plaintiffs' request that they not be required to make mortgage payments is merely self-serving and certainly does not require permission from the Court. The decision to default on their mortgage is entirely within their power. That Plaintiffs could possibly prove their claim that Defendant violated the HLPA must not be confused with the issue at hand, whether the requested relief would be adverse to the public interest. There is a strong public interest in requiring adherence to contracts. Granting Plaintiffs permission to walk away from a contract into which they voluntarily entered does not favor public policy.

Finally, Plaintiffs must show a substantial likelihood of prevailing on the merits. Plaintiffs state that they are likely to prevail under the HLPA and consequently, the Unfair Practices Act because the financial transaction at issue qualifies as a "high-cost home loan." As used in the HLPA:

> I. "high-cost home loan" means a home loan in which:
> (1) the contract rate exceeds the rates threshold; or
> (2) the total points and fees exceed the total points and fees threshold;
>
> . . . .
>
> N. "rate threshold" means:
> (1) for a first lien mortgage home loan, an interest rate equal to seven percentage points over the yield on treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the loan is made; and
> (2) for a subordinate mortgage lien, an interest rate equal to nine percentage points over the yield on treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the loan is made;
>
> . . . .

5

> Q. "total points and fees threshold" means:
> (1) for a home loan in which the total principal loan amount is twenty thousand dollars ($20,000) or more, an amount equal to five percent of the total principal loan amount; and
> (2) for a home loan in which the total principal loan amount is less than twenty thousand dollars ($20,000), an amount equal to the lesser of one thousand dollars ($1,000) or eight percent of the total principal loan amount.

N.M. STAT. ANN. § 58-21A-3 (West 1978).

Here, the term of the Note was 181 months, or fifteen years and one month. Plaintiffs concede that the Mortgage Note's interest rate of 11.94% was below the then-current 20 year Treasury rate of 5.01% plus 7 percentage points. *Doc. 1-3* at 13. However, Plaintiffs maintain that the interest rate of the then-current 10 year Treasury rate of 4.76% should apply, and that the 11.94% rate therefore exceeds the rate threshold under the HLPA.

The New Mexico Legislature tasked the financial institution division of the regulation and licensing department with adopting rules necessary to implement the HLPA. N.M. STAT. ANN. § 58-21A-13 (West 1978). One such promulgated rule clearly states that "if the loan's maturity is ***exactly*** halfway between security maturities, the rate threshold test on the loan should be compared with the yield for treasury securities having the lower yield[.]" N.M. ADC 12.15.3.13(A)(4) (2004) (emphasis added). Since the maturity date of the loan here is not exactly halfway between security maturities, it appears that Defendant properly used the interest rate on a 20 year treasury bill. Thus, neither the contract interest rate nor the total points and fees exceed thresholds as defined by the Act. Because the loan apparently does not constitute a "high-cost home loan" under the HLPA, the additional protections provided by the Act do not apply.

Despite whether or not Plaintiffs can prevail on the merits, they have failed to show that:

(1) they will suffer irreparable harm unless the injunction is issued; (2) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (3) the injunction, if issued, will not adversely affect the public interest. Consequently, Plaintiffs cannot be granted the extraordinary remedy of a preliminary injunction.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Emergency Temporary Restraining Order and Application for Preliminary Injunction *(Docs. 1-3 & 1-4)* are **denied**.

_____
UNITED STATES MAGISTRATE JUDGE